# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL PATRICK KENNY,<br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>*Defendant*. | No. 3:17-cv-01178 (JAM) |

## RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Michael Patrick Kenny alleges that he is disabled and unable to work due to several conditions. He filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant Commissioner of Social Security, who denied plaintiff's application for social security disability insurance benefits. For the reasons set forth below, I will deny plaintiff's motion to remand the decision of the Commissioner, and I will grant the Commissioner's motion to affirm the decision of the Commissioner.

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #13-1 through Doc. #13-10. Plaintiff filed an application for social security disability income on August 19, 2014, alleging a disability beginning on July 1, 2012. Plaintiff's claim was initially denied on January 6, 2015, and denied again upon reconsideration on June 29, 2015. He then filed a written request for a hearing on July 9, 2015.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) John Aletta on August 17, 2016. Plaintiff was represented by counsel. On October 28, 2016, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social

Security Act. *See* Doc. #13-3 at 28–43. The Appeals Council affirmed the decision of the ALJ on May 30, 2017. Plaintiff then filed this federal action on July 14, 2017.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally,

2

> if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that plaintiff last met the insured status requirement of the Social Security Act on December 31, 2015. Doc. #13-3 at 30. Plaintiff had not engaged in substantial gainful activity since July 1, 2012, the date of the alleged onset of his disability, through his date last insured. At Step Two, the ALJ found that plaintiff suffered from the following severe impairments: "affective disorders, degenerative disc disease of the lumbar spine, peripheral neuropathy and asthma." *Ibid.*

At Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 32.

At Step Four, the ALJ found that, through the date last insured, plaintiff "had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can tolerate no concentrated exposure to humidity, wetness or extreme cold. Further, the claimant is restricted to performing simple, routine tasks, with no contact with the public and

occasional contact with co-workers and changes in his work setting should be limited to simple work-related decisions." *Id.* at 34. The ALJ also concluded at Step Four that plaintiff was unable to perform any of his past relevant work. *Id.* at 41.

At Step Five, after considering plaintiff's age, education, work experience, and residual functional capacity (RFC), the ALJ concluded that, through the date last insured, there were jobs that plaintiff could perform that existed in significant numbers in the national economy. *Id.* at 42. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 43.

On May 30, 2017, the Appeals Council affirmed the decision of the ALJ. *Id.* at 2. Plaintiff then timely filed this action on July 14, 2017.

**DISCUSSION**

Plaintiff alleges that the ALJ erred at Step Three by finding that none of plaintiff's impairments met or equaled impairments in the listings. The ALJ considered Listing 1.04 (disorder of the spine), 11.14 (peripheral neuropathy), 3.03 (asthma), and 12.04, 12.06, 12.09 (mental impairments). For each of these listings, the ALJ properly "set forth a sufficient rationale in support of his decision to find or not find a listed impairment." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (*per curiam*).

Plaintiff first argues that the ALJ erred in concluding that plaintiff's spine impairment did not meet or equal Listing 1.04 for disorder of the spine. Listing 1.04 requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. pt. 404, Subpt. P, App. 1, Section 1.04 (2006). Such a disorder can be demonstrated by (a) evidence of nerve root compression accompanied by sensory or reflex loss; (b) spinal arachnoiditis manifested by

severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or (c) lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. *Ibid.* Plaintiff does not explain or appear to argue that he has a spinal disorder that has resulted in the compromise of a nerve root or the spinal cord. Plaintiff recounts his back pain and related treatment, but does nothing to show that his spine impairment meets any of the requirements of Listing 1.04.

Moreover, the Commissioner has pointed to substantial evidence in the record supporting the ALJ's conclusion that plaintiff's spinal disorder did not meet the requirements of listing 1.04. *See* Doc. #13-10 at 27 (record from treating physician Dr. Zhang noting "no evidence of significant lumbar disc herniation, spinal stenosis, or evidence of nerve root compression at any level"). I conclude that the ALJ's finding that plaintiff's spinal disorder did not meet or equal the listing of 1.04 was supported by substantial evidence.

Plaintiff next argues that the ALJ erred by concluding that plaintiff's impairment did not meet Listing 11.14 for peripheral neuropathy. Listing 11.14 defines peripheral neuropathy as:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> B. Marked limitation in physical functioning, and in one of the following:
>   1. Understanding, remembering, or applying information; or
>   2. Interacting with others; or
>   3. Concentrating, persisting, or maintaining pace; or
>   4. Adapting or managing oneself.

20 C.F.R. § 404, Subpt. P, App. 1, § 11.14. "Extreme limitation" refers to "the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." *Id*. § 11.00(D)(2). In contrast, "marked limitation means that, due to the signs and symptoms of

5

your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities." *Id*. § 11.00(G)(2)(a). And "[t]he persistent and intermittent symptoms must result in a serious limitation in your ability to do a task or activity on a sustained basis." *Id*.; *see also Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (discussing Listing 11.14).

Plaintiff does not explain how his peripheral neuropathy meets or equals any of the requirements of Listing 11.14. As to § 11.14A, the record supports the ALJ's conclusion that plaintiff did not have a disorganization of motor function in two extremities that resulted in an extreme limitation on his abilities as defined by the regulation. Plaintiff cites records reflecting medical issues with his knees, but none of these records suggest that plaintiff had any "extreme limitations" as required by § 11.14A. In fact, the records that plaintiff cites reflect that he had moderate or mild pain with motion as to certain limbs and joints. *See* Doc. #13-10 at 87, 95. As to § 11.14B, the record also supports the ALJ's conclusion. The aforementioned records support a finding that plaintiff had a moderate limitation, not a "marked limitation" as that limitation is defined by the regulation.

Plaintiff further argues that the ALJ erred in finding that plaintiff's mental health conditions did not meet or equal Listing 12.04 (depressive, bipolar and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders). Plaintiff concedes that his conditions did not meet either of these the listings, but argues that they equaled the listings because of their severity. To qualify as a listed impairment under Listing 12.04 or 12.06, the claimant's impairment must satisfy the criteria in both paragraphs A and B, or the criteria in paragraphs A and C, of those listings.

The ALJ considered the severity of plaintiff's mental impairments "singly and in combination" and concluded that they did not equal the criteria of 12.04, 12.06, or 12.09. Doc. #13-3 at 32. In making his finding, the ALJ first considered whether the "paragraph B" criteria of Listings 12.04 and 12.06 were satisfied. Listings 12.04 and 12.06 have the same paragraph B criteria: "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Doc. #13-3 at 32–33.

Plaintiff appears to argue that he has great difficulties regarding daily living and concentration, persistence, or pace. The ALJ found that plaintiff had mild restriction in daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. *Id.* at 33.

As to daily living, the ALJ relied primarily on plaintiff's hearing testimony. Plaintiff testified that he lived alone. Doc. #13-3 at 76. Plaintiff described difficulty with daily living but attributed that principally to other physical ailments, such as pain in his knees, legs, and back. *Id.* at 92. The ALJ also cited a mental health report that plaintiff had "mild deficiencies" with daily living activities as the result of his mental health impairments. Doc. #13-8 at 70. Plaintiff has not pointed to anything in the record suggesting that he had more than mild restrictions of activities of daily living.

As to concentration, persistence or pace, plaintiff relies on the record of his licensed marriage and family therapist, Nadine Behmke, but that record notes that plaintiff was only moderately limited as to "memory and understanding" (moderate in 3 of 3 categories), and as to "sustained concentration and persistence" (moderate in 5 out of 8 categories and markedly

7

limited in 3 out of 8 categories). Doc. #13-10 at 151. Plaintiff does not point to any other evidence supporting his claim.

The ALJ also considered whether the "paragraph C" criteria for Listings 12.04 and 12.06 were satisfied. The paragraph C criteria requires extreme functional limitations specific to the particular listing at issue. The ALJ determined that the evidence failed to establish the presence of the "paragraph C" criteria in this case. Doc. #13-3 at 33. Plaintiff does not argue that he met any of the paragraph C criteria. Accordingly, I conclude that the ALJ's determination that plaintiff's impairment did not meet or equal any of the Listings is supported by substantial evidence.

Lastly, plaintiff's memorandum briefly lists a series of challenges to the ALJ's RFC finding, but does nothing to expand upon most of these arguments. These arguments include that improper weight was given to a state agency medical consultant, improper weight was given to treating physicians, and that plaintiff's asthma was not "fully appreciated." Doc. #18 at 20-21. Because plaintiff does not explain or elaborate upon many of these arguments, I consider them forfeited, and I will not address them.

Plaintiff argues that he could not perform the three jobs identified by the ALJ in his ruling because those jobs require various types of movement that plaintiff cannot engage in. I construe this argument as a challenge to ALJ's RFC finding for failing to include certain restrictions. In particular, plaintiff alleges that the RFC is flawed because it failed to include limitations on fingering and handling objects, contrary to his restriction on "fixed positioning" as demonstrated in the medical source statement of PA Mathew and Peck and limited ability to finger and handle objects.

8

The ALJ extensively considered the medical source statement of PA Mathew. Doc. #13-3 at 40. At the time of the ALJ's decision PA Matthew was not considered an acceptable medical source and was not entitled to controlling weight. *Ibid.* The ALJ also noted that PA Mathew only started treating plaintiff after the date last insured, and his views of the severity of plaintiff's limitations were inconsistent with the totality of the record. *Ibid.* Moreover, the ALJ cited numerous medical records to support his conclusion regarding the lack of further restrictions in the RFC. *Id.* at 36-38. Accordingly, I conclude that the ALJ's RFC finding is supported by substantial evidence.

## CONCLUSION

For the reason stated above, plaintiff's motion to remand or reverse the decision of the Commissioner (Doc. #18) is DENIED. The Commissioner's motion to affirm the decision of the Commissioner (Doc. #25) is GRANTED.

It is so ordered.

Dated at New Haven this 24th day of September 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge